UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| VINCENT J. BIFOLCK, AS EXECUTOR OF THE ESTATE OF JEANETTE D. BIFOLCK AND INDIVIDUALLY, <br><br> Plaintiff, <br><br> v. <br><br> PHILIP MORRIS INCORPORATED, <br><br> Defendant. | CIVIL ACTION <br> NO: 3:02CV878 (SRU) <br><br><br> July 31, 2002 |

## PHILIP MORRIS INCORPORATED'S FIRST REQUEST FOR THE PRODUCTION OF DOCUMENTS

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, defendant Philip Morris Incorporated ("Philip Morris") hereby requests that plaintiff Vincent J. Bifolck, Executor of the Estate of Jeanette D. Bifolck and individually, produce the documents specified below at the offices of Goodwin Procter LLP, Exchange Place, Boston, Massachusetts 02109, within thirty (30) days after this request is served.

### DEFINITIONS

For the purposes of these interrogatories:

1. "Plaintiff," "You," and "Your" shall refer collectively to Vincent J. Bifolck, Executor of the Estate of Jeanette D. Bifolck and individually, and, where applicable, his agents, attorneys, representatives or any other persons acting or purporting to act on his behalf.

2. "Decedent" shall refer to Jeanette D. Bifolck.

## REQUESTS FOR DOCUMENTS

1. All of Plaintiff's and Decedent's birth and marriage documents, including birth certificates, baptismal certificates, marriage certificates, divorce certificates and judgments, and separation agreements.

2. All medical records and reports relating to any examination of, treatment of, or consultation with Decedent or her physicians regarding any injury, illness, or physical or mental condition Decedent suffered, including but not limited to, x-rays, pathological materials, admission records, notes and histories, prescription records, correspondence, substance abuse treatment records, psychiatric and psychological records, billing records, and invoices.

3. Each of Plaintiff's and Decedent's federal, state and local income tax returns for the previous ten (10) years, whether filed individually or jointly, including all attachments, schedules, and Wage or Earnings Statements (Forms W-2).

4. All Documents that refer or relate to any welfare benefits or claims, worker's compensation benefits or claims, social security benefits or claims, health or disability benefits or claims, or any other governmental benefits or claims that were provided to or made by or on behalf of Decedent.

5. All Documents that refer or relate to Decedent's employment history, including place, date, and type of employment; Personnel and/or Human Resources records; description of job functions; safety, accident, disciplinary, and medical treatment reports; and records relating to military service, if any.

**CERTIFIED COPY**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT

<u>VOLUME I</u>

```
- - - - - - - - - - - - - - - - - - x
                                    :
VINCENT J. BIFOLCK, AS EXECUTOR OF  :
THE ESTATE OF JEANETTE D. BIFOLCK   :
AND INDIVIDUALLY,                   :
                                    :
              Plaintiffs,           :
                                    : Civil Action No.
       vs.                          : 302 CV 878
                                    :
PHILIP MORRIS, INC.,                :
                                    :
              Defendant.            :
                                    :
- - - - - - - - - - - - - - - - - - x
```

    Deposition of VINCENT J. BIFOLCK, taken pursuant to the Federal Rules of Civil Procedure, at the law offices of Tyler, Cooper & Alcorn, CityPlace I, Hartford, Connecticut, before Michelle E. Pappas, License #00081, a Notary Public in and for the State of Connecticut, on Tuesday, June 29, 2004, at 9:52 a.m.

SCRIBES, INC.

1  A.  No.

2  Q.  Did she frequently have colds at any time
3  during her life?

4  A.  Other than once a year, no.

5  Q.  Did your wife have any stomach problems or
6  intestinal problems?

7  A.  No.

8  Q.  Up until the -- until 1999 your wife never
9  had any breath problems --

10  A.  No.

11  Q.  -- is that correct?

12     Did your wife receive regular chest x-rays at
13  any point in her life?

14  A.  Yeah, she always went once a year for her
15  mammograms.

16  Q.  Other than the once a year mammograms did
17  your wife receive any other sorts of x-rays on a
18  regular basis?

19  A.  No.

20  Q.  Did your wife ever have any problems with her
21  throat?  Was she ever -- sore throat or hoarsness?

22  A.  Not until the end.

23  Q.  Was your wife ever treated for any kind of
24  psychological or emotional problems or issues?

25  A.  I believe she saw a psychologist couple of

```
 1   times.
 2       Q.   When was that?
 3       A.   Somewhere in the '90s.  I have no clue.
 4       Q.   Why did she see a psychologist?
 5       A.   I'm not really sure.
 6       Q.   How did you know she was -- she had seen a
 7   psychologist?
 8       A.   She told me.
 9       Q.   What did she tell you?
10       A.   That she was seeing -- I don't even remember
11   the person's name -- that she's trying to get her act
12   together.
13       Q.   What did you understand her to mean by saying
14   she wanted to get her act together?
15       A.   Don't know.
16       Q.   Was your wife having any sort of problems in
17   about that time when she was seeing the psychologist?
18       A.   Not that I'm aware of.
19       Q.   She didn't see the psychologist to try to
20   quit smoking as far as you know?
21       A.   No.
22       Q.   Were there any other difficulties in your
23   marriage at about the time that your wife went to see
24   the psychologist?
25       A.   No.
```

SCRIBES, INC.

```
 1         Q.    You mentioned that there were some problems
 2   with your kids.  What were those problems?
 3         A.    Just hell raisers, you know, just over, how
 4   do I say, rambunctious.  Didn't want to listen.
 5         Q.    What ages were your kids at that point?
 6         A.    Around the age of 15.
 7         Q.    And was there one child in particular that
 8   there was some issues?
 9         A.    There's two of them that we did bring to see
10   a psychologist.
11         Q.    And who were they?
12         A.    Stacey and Virginia.
13         Q.    And separate from your bringing those two
14   daughters to see a psychologist, your wife also saw a
15   psychologist on her own; is that correct?
16         A.    Yes.  Not at that time, it was after the
17   fact.
18         Q.    Okay.  As best you can recall, what year was
19   it that your wife saw a psychologist for herself?
20         A.    I don't remember.
21         Q.    It was the 1990s though, you believe?
22         A.    Yes.
23         Q.    Do you remember if it was before or after her
24   mother died?
25         A.    Definitely after.
```

GOODWIN | PROCTER

John B. Daukas
617.570.1686
jdaukas@
goodwinprocter.com

Goodwin Procter LLP
Counsellors at Law
Exchange Place
Boston, MA 02109
T: 617.570.1000
F: 617.523.1231

September 15, 2004

**Via Regular Mail and Facsimile (203) 325-3769**

Jonathan Levine, Esq.
Silver, Golub & Teitell LLP
184 Atlantic Street
Stamford, CT 6904

Re:   **Bifolck v. Philip Morris, Inc., C.A. No. 3:02 CV 878 (JCH)**

Dear Jonathan:

      I write to follow up with you on outstanding discovery matters, some of which we discussed recently during breaks in depositions.

1. In March 2004, we requested the identity of Jeanette Bifolck's pediatrician. Kindly let me know if you have this information (*i.e.*, name, location, and/or any other descriptive information).

2. Vincent Bifolck testified that he has the registry or guestbook from Mrs. Bifolck's funeral. We renewed our request for this material in July 2004 and you indicated that your office would respond shortly.

3. Mr. Bifolck testified that Mrs. Bifolck saw a mental health professional at some point. When we discussed this issue on July 16, 2004, you indicated you first wanted to review any materials from Mrs. Bifolck's mental health professional(s). We recently obtained insurance records indicating that Dr. Christina E. Moore, a psychologist located in Mansfield, CT, treated Mrs. Bifolck from January 1995 through June 1996. We would like all records, notes, or other written materials concerning Mrs. Bifolck's visits with Dr. Moore or any other mental health professional.

4. "Philip Morris USA Inc.'s Third Set of Interrogatories to Plaintiff" was served on July 23, 2004. These simply concern the videotape of home movies discussed during Vincent Bifolck's deposition. I believe your response is overdue.

5. Please confirm that Mrs. Bifolck did not maintain any diary or other personal journal. If such material exists, kindly provide it to us at your earliest convenience.

**GOODWIN | PROCTER**

Jonathan Levine, Esq.
Silver, Golub & Teitell LLP
September 15, 2004
Page 2

6.  Lastly, we recently discussed Mrs. Bifolck's pathology specimens. We agreed that your office will obtain these materials and then provide them to us. Please let me know when your office has retrieved these pathology specimens and when we can review them. I think it is in all our interests to review the pathology sooner rather than later.

I hope we can resolve these matters promptly in light of Judge Hall's directive to move this case forward. Thank you in advance for your cooperation, and please contact me if you have any questions.

Very truly yours,

John B. Daukas

cc:  Thomas J. Griffin Jr., Esq.
     James F. Stapleton, Esq. (by Regular Mail)

LIBA/1412743.1