UNITED STATES DISTRICT COURT   FILED

DISTRICT OF CONNECTICUT   2004 DEC 13 P 3: 56

U.S. DISTRICT COURT
BRIDGEPORT, CONN

VINCENT J. BIFOLCK, AS EXECUTOR :
OF THE ESTATE OF JEANETTE D. :
BIFOLCK AND INDIVIDUALLY : 3:02CV878 (JCH)
 :
V. :
 :
PHILIP MORRIS USA INC. : DECEMBER 13, 2004

### PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL PRODUCTION OF PSYCHIATRIC RECORDS

Plaintiff Vincent J. Bifolck, through counsel, hereby submits this opposition to defendant Philip Morris USA Inc.'s Motion to Compel the production of certain psychiatric records of plaintiff's decedent Jeanette D. Bifolck.

The basis for plaintiff's objection to the production of the psychiatric records at issue in the motion is that there has been no showing that those records are relevant (either temporally or by subject matter) to any of the issues being litigated in this action. Plaintiff's emotional distress claim is limited to the distress arising from her cancer which was diagnosed at least three years after the mental health treatment at issue in defendant's motion to compel. Likewise, mental health records from a discrete treatment period which ended almost four years before plaintiff's decedent's death has, at best, only limited relevance to plaintiff's claim for the loss of consortium of his wife.

Given the attenuated temporal relationship between the claims at issue in this action and the mental health treatment records whose disclosure is sought - and in light of the particularly private nature of psychiatric records and the statutory privilege attached to those records, see

Conn. Gen. Stats. § 52-146c - plaintiff respectfully submits that defendant's Motion to Compel production of these particular records should be denied.

I. **STATEMENT OF FACTS**

Plaintiff Vincent J. Bifolck has instituted this action on behalf of the Estate of his late wife, Jeanette D. Bifolck, and individually against defendant Philip Morris, Inc. to recover damages arising from his wife's death from lung cancer contracted from smoking defendant's Marlboro and Marlboro Lights cigarettes.

Mrs. Bifolck was diagnosed with lung cancer in October 1999 and died from her lung cancer approximately five months later, on March 9, 2000.

Plaintiff's Complaint alleges that as a result of her lung cancer, Mrs. Bifolck suffered "severe emotional distress, anguish and anxiety, including fear of death." Complaint, First Claim for Relief, ¶ 14. Plaintiff's Complaint also asserts a cause of action for Mr. Bifolck's loss of the consortium of his wife. Id., Second Claim for Relief.

During discovery in this matter, plaintiff was asked at deposition whether Mrs. Bifolck had ever been treated for psychological or emotional problems or issues. [Def. Mem. in Support of Motion to Compel, Exhibit 2, at pp. 320-21]. Plaintiff responded that he believed Mrs. Bifolck had treated sometime in the 1990s with a psychologist. [Id. at p. 321, 324]. Plaintiff did not know the name of the psychologist and could not identify with any greater specificity when the treatments took place. [Id.]. Plaintiff did testify, however, that Mrs. Bifolck's treatment with the psychologist had not been in connection with any effort to quit smoking. [Id. at 321].

2

Although Mr. Bifolck was unable to identify either the mental health professional with whom his wife had treated, nor the period of that treatment, counsel for defendant subsequently advised counsel for plaintiff that documentation in an insurance file which defense counsel had obtained reflected that Mrs. Bifolck had treated with a psychologist, Christina Moore, *between January 1995 and June 1996*. [Affidavit of Michael K. Murray, dated November 11, 2004, Exhibit 1]. Neither party is currently aware of the substance of that treatment.[1]

---

[1] The parties have recognized that defendant's Motion to Compel is something of a "placeholder" motion necessitated more by the close of fact discovery effective November 12 than by an actual impasse between counsel concerning the discoverability of Dr. Moore's records. When the parties first determined that Mrs. Bifolck had received psychological treatment, plaintiff's counsel took the position that it was appropriate for counsel to review those records to determine whether the records were relevant to this litigation and, if so, whether any countervailing considerations (such as impact on third parties) might render such disclosure inappropriate or otherwise necessitate limits on such disclosure. Without waiving their claim to those notes, defense counsel was amenable to such a procedure. [Murray Aff., Exhibit 1].

After the parties' discussion of this procedure, plaintiff's counsel attempted to obtain copies of the records from Dr. Moore at three separate addresses which counsel obtained, and attempted repeatedly to reach her by telephone. Dr. Moore, who just returned from an extended work stay in Laos, telephoned counsel for plaintiff today, and has agreed to forward the records in her possession. Counsel for plaintiff will not have received the records prior to the filing of this Opposition Memorandum, but, in light of the above, will contact counsel for defendant to further discuss the matter..

As plaintiff's counsel has advised counsel for defendant, plaintiff remains willing to disclose the psychological records if they are relevant to this litigation and are not unduly intrusive on the relationship between Mrs. Bifolck and third parties (such as her children, siblings, parents and friends). See, e.g. Swarr v. Swarr, 1998 WL 779573 at *1 (Conn. Super. Oct. 22, 1998) (Gruendel, J.) (attached hereto) (ordering redaction of psychiatric records and denying disclosure of matters involving communications between plaintiff and her health care providers about plaintiff's siblings and parents). However, because plaintiff's counsel has not yet had the opportunity to review the records of Dr. Moore, plaintiff submits this opposition to defendant's "placeholder" Motion to Compel to preserve plaintiff's possible objections to the discoverability of Dr. Moore's records.

3

## II.   ARGUMENT

Under Connecticut[2] law, psychologist-patient communications enjoy a statutory privilege against disclosure, absent express consent by the patient. Conn. Gen. Stats. § 52-146c(b). The only exception to the privilege applicable here is section 52-146c(c)(2), which provides:

> (c) Consent of the person shall not be required for the disclosure of such person's communications:
>
> ...
>
> (2) If, in a civil proceeding, a person introduces his psychological condition as an element of his claim or defense or, after a person's death, his condition is introduced by a party claiming or defending through or as a beneficiary of the person, and the judge finds that it is more important to the interests of justice that the communication be disclosed than that the relationship between the person and the psychologist be protected.

Thus, under the circumstances applicable in this case Connecticut law imposes two separate requirements, before the psychiatric privilege can be pierced. First, the patient (or her representative) must have introduced her psychological condition "as an element of [her] claim or defense." Cabrera v. Cabrera, 23 Conn. App. 330, 339, 580 A.2d 1227, 1233 (1990). Second, the court must make a finding that "it is more important to the interests of justice that the communications be disclosed than that the [patient-psychologist] relationship be protected." Id.; see also Berglass v. Berglass, 71 Conn. App. 771, 787, 804 A.2d 889, 901 (2002) (trial court properly found that justice did not require that privilege be overridden to introduce medical records that delved into defendant's past medical history).

---

[2] Pursuant to Rule 501 of the Federal Rules of Evidence, where state law supplies the rule of decision, the privilege of a witness is determined in accordance with state law. Connecticut law provides the substantive rule of decision in this diversity action and, thus, governs relevant claims of privilege.

4

"The burden is on the party seeking disclosure to establish that justice requires it." <u>Kelly v. Giguere</u>, 2000 WL 1918027 at *1 (Conn. Super. Dec. 19, 2000) (Sferrazza, J.) (attached hereto), <u>citing</u> <u>Cabrera</u>, 580 A.2d at 1233.

Plaintiff submits that Mrs. Bifolck's mental condition has not been placed sufficiently at issue in this litigation to sustain defendant's burden of showing that justice requires disclosure of records of mental health treatment which Jeannette Bifolck received in 1995 and 1996 - more than three years before the cancer diagnosis at issue in this litigation. <u>See</u> <u>Kelly</u>, 2000 WL 1918027 at * 1 (denying disclosure of psychiatric records from 1984 in litigation concerning aftermath of a motor vehicle accident in 1997 because such communications "are remote in time and relevancy").

Indeed, defendant proffers only two reasons in its memorandum in support of its contention that it is entitled to discovery of Mrs. Bifolck's treatment records with Dr. Moore. First, defendant contends that if the records contain no reference to smoking or to a desire to quit smoking, the absence of any such reference would "cast doubt on plaintiff's allegations of addiction" and would undermine plaintiff's claims that Mrs. Bifolck wanted to but was unable to quit smoking cigarettes. But the *absence* of any reference to cigarette smoking in Dr. Moore's records hardly necessitates their disclosure. To the contrary, a simple stipulation that Mrs. Bifolck treated with Dr. Moore and never discussed her cigarette addiction would be sufficient to satisfy defendant's interest.[3] Nor – assuming that Mrs. Bifolck may have discussed her relationship with her husband during her treatment – are references in psychological records

---

[3] Obviously, plaintiff does not object to disclosure of any communications in the records which do mention Mrs. Bifolck's smoking.

5

during a discrete 18-month period of time more than three and one half years before Mrs. Bifolck's death sufficiently relevant to plaintiff's loss of consortium claim to justify piercing the psychologist-patient privilege. See Kelly, *supra*.

Although Connecticut state court decisions have provided virtually no guidance as to the standards for when an allegation of emotional distress sufficiently places a plaintiff's mental state at issue to support a finding that the interests of justice mandate disclosure of past psychiatric treatment records, federal case law interpreting the analogous federal common law psychotherapist-patient privilege is instructive[4]. A majority of federal courts have determined that a patient does not waive the privilege unless "the plaintiff has done more than allege 'garden-variety' emotional distress." Where, by contrast, the plaintiff's emotional distress claims are limited to "garden-variety claims" - i.e., claims where the emotional distress is incidental to other physical damages and is of the type commonly proven by lay (not expert) testimony – a finding of waiver is inappropriate. See, e.g., Ruhlmann v. Ulster County Department of Social Services, 194 F.R.D. 445, 450 (N.D.N.Y. 2000); Stevenson v. Stanley Bostitch, Inc., 204 F.R.D. 551, 557 (N.D. Ga. 2001)[5].

---

[4] The federal common law psychotherapist-patient privilege was recognized by the Supreme Court in Jaffee v. Redmond, 518 U.S.1 (1980).

[5] As these courts have noted, even courts that have seemingly adopted a "broader" view of waiver, have ordered disclosure only where significant emotional harm is alleged or the mental condition is at the heart of the litigation and have not ordered disclosure in cases of "garden-variety" emotional distress damages. See, e.g., Ruhlmann, 194 F.R.D. at 449 (discussing cases).
Indeed, a substantial minority of federal courts, relying on the analogous attorney-client privilege, have adopted an even narrower view of waiver, holding that a plaintiff has not waived the privilege unless the plaintiff is relying on the opinion of the treater or the allegations of the complaint put the patient's actual communications with the treater at issue. See, e.g., Vanderbilt v. Chilmark, 174 F.R.D. 225, 229 (D.Mass. 1997); Fitzgerald v. Cassil, 216 F.RD. 632, 638 (N.D. Cal. 2003).

6

Plaintiff's claims for emotional distress and loss of consortium are precisely the type of "garden-variety" claims which the federal courts have routinely held are insufficient to establish waiver of the psychologist-patient privilege. The evidence of Mrs. Bifolck's emotional distress during the five months between her diagnosis and death from cancer and the evidence of Mr. Bifolck's loss of the consortium of his wife and the effect on him individually of that loss will come exclusively from the observations of lay witnesses. No psychological "diagnosis" will be presented and no expert testimony will be had. Under these circumstances, and in the absence of an articulation of a compelling actual need for the records of Mrs. Bifolck's psychological treatment in 1995 to 1996, defendant has not met its burden of demonstrating that the interests of justice require disclosure of those records.[6]

---

[6] The cases cited by defendant in its memorandum in support of disclosure are inapposite. Doe v. Meachum, 126 F.R.D. 444 (D.Conn. 1989) involved class action impact litigation challenging the policies of the Connecticut Department of Corrections regarding inmates infected with the HIV virus and disclosure of inmate medical records was ordered – subject to a strict protective order – as necessary to enable plaintiffs' experts to assess whether the defendant Department of Corrections was adequately meeting the medical needs of HIV- infected inmates. In Padgett, plaintiff claimed special damages for psychological and drug treatment – thus putting her prior psychiatric treatment at issue in the litigation since it inserted the issue of whether the treatment for which she claimed damages was attributable to the defendant's conduct or to a prior pre-existing condition. 1992 WL 394414 at * 1. Neither Doe – which involved the public interest in constitutional impact litigation nor Padgett – which involved more than the type of "garden variety" claim for emotional distress at issue here -- provides meaningful guidance concerning the propriety of compelling disclosure of Mrs. Bifolck's psychological records in this case.

### III. CONCLUSION

For the foregoing reasons, defendant's Motion to Compel should be denied.

                PLAINTIFF VINCENT J. BIFOLCK, EXECUTOR
                OF THE ESTATE OF JEANNETTE D. BIFOLCK,

BY: _____
    DAVID S. GOLUB  ct 00145
    JONATHAN M. LEVINE ct 07584
    MARILYN J. RAMOS ct11433
      SILVER GOLUB & TEITELL LLP
    P.O. BOX 389
    184 ATLANTIC STREET
    STAMFORD, CT 06904
    (203) 325-4491

## CERTIFICATION

This is to certify that a copy of the foregoing has been mailed, postage prepaid, this 13th day of December, 2004, to:

James F. Stapleton
Day, Berry & Howard LLP
One Canterbury Green
Stamford, CT 06901

Thomas J. Griffin, Jr., Esq.
John B. Daukas, Esq.
Michael Murray, Esq.
Kenneth Y. Lee, Esq.
Goodwin Proctor LLP
Exchange Place
Boston, MA 02109

_____
MARILYN J. RAMOS

Westlaw.

Not Reported in A.2d
2000 WL 1918027 (Conn.Super.)
(Cite as: 2000 WL 1918027 (Conn.Super.))

Page 1

Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Superior Court of Connecticut.

Susan KELLY,
v.
Florence GIGUERE, et al.

No. CV9969450S.

Dec. 19, 2000.

MEMORANDUM OF DECISION

SFERRAZZA.

*1 The plaintiff, Susan Kelly, moves to quash three subpoenas duces tecum and for protective orders regarding a defense demand for disclosure of records relating to the plaintiff's mental condition and treatment. Since the filing of this motion, the plaintiff has produced records covered by two of the subpoenas and is only pursuing this motion with respect to records of Dr. Mozzicato, a psychiatrist.

The defendants, Florence Giguere and Shenique Hall, object to this motion. They contend that the plaintiff, by bringing this action, has placed her mental status and its history in issue and that these records are needed to present an adequate defense.

In her amended complaint, the plaintiff alleges that she was injured in a motor vehicle accident on March 6, 1997, because of the negligence or recklessness of the defendants. Further, she alleges that the collision caused traumatic injury to her head; concussion; severe and persistent headaches; exacerbation of a preexisting migraine headache propensity; anxiety embarrassment; sleep disruption; decreased concentration; depression; and mental anguish and distress of the mind. She avers that some of these injuries are permanent.

General Statutes § 52-146e prohibits disclosure of communications between a patient and psychiatrist without consent of the patient except as provided in General Statutes § 52-146f. Section 52-146f(5) permits disclosure of such communications or records "in a civil proceeding in which the patient introduces his mental condition as an element of his claim ... and the court or judge finds that it is more important to the interests of justice that the communication be disclosed than the relationship between patient and psychiatrist be protected." The burden is on the party seeking disclosure to establish that justice requires it, *Cabrera v. Cabrera,* 23 Conn.App. 330, 339, 580 A.2d 1227 (1990).

The court finds that the plaintiff has introduced her mental state as an element of her claims in this case. She specifically asserts head trauma causing symptoms and sequella concerning depression, mental distress, loss of concentration, anxiety, and sleep disruption. To determine whether the need for disclosure overrides the need for confidentiality of patient communications to her psychiatrist, the court has conducted an in camera review of Dr. Mozzicato's records.

Certain records pertain to communications made in 1984. These communications are highly sensitive and bear little on the issues of the present litigation concerning the aftermath of the motor vehicle accident in 1997. Allowing disclosure of such communications which are remote in time and relevancy would unnecessarily undermine the confidence the plaintiff placed in her psychiatrist.

The remaining records of Dr. Mozzicato deal with the consequences of the motor vehicle accident which is the subject of this lawsuit. These records, and the communications contained in them, connect directly

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d  
2000 WL 1918027 (Conn.Super.)  
**(Cite as: 2000 WL 1918027 (Conn.Super.))**

Page 2

to the validity and extent of the plaintiff's claims of injury to her mental state. Therefore, copies of Dr. Mozzicato's records regarding the plaintiff from November 1999 to August 2000 are ordered disclosed to the defendants' counsel. These communications by the plaintiff cover the very ground which the plaintiff will have to prove at trial to make her case and reveal no confidences which would not, of necessity, be revealed in any event. Any negative impact on the plaintiff's relationship with Dr. Mozzicato is overcome by the defendants' need to prepare an adequate defense. The interests of justice demand this disclosure.

The court has segregated those records of Dr. Mozzicato which are disclosable from those which remain confidential. The confidential material is ordered sealed and preserved for appellate review if necessary.

2000 WL 1918027 (Conn.Super.)

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in A.2d  
1998 WL 779573 (Conn.Super.)  
**(Cite as: 1998 WL 779573 (Conn.Super.))**

Page 1

Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Superior Court of Connecticut.

Ann C. SWARR  
v.  
Robert SWARR.

**No. FA 970716701.**

Oct. 22, 1998.

MEMORANDUM OF DECISION

GRUENDEL.

*1 In this matter, the defendant husband filed a motion dated July 7, 1998 to compel disclosure by the plaintiff wife of medical records including office notes from the wife's health care providers, including her psychologist. The plaintiff objected to the production of all of those records, claiming, inter alia that they are protected from disclosure pursuant to Section 52-146c of the General Statutes. The plaintiff, however, claims an inability to work because of psychiatric illness, and has disclosed several of her health care providers as expert witnesses.

The parties were first heard on these issues on August 12, 1998 before Judge Mack, who granted the defendant's motion for disclosure of the subject records, including notes. Judge Mack ordered that all notes be turned over to the defendant's counsel, but permitted the plaintiff's counsel to withhold those notes that counsel contended were too sensitive. Judge Mack ordered those notes deemed by the plaintiff's counsel to be too sensitive submitted to the court for in camera review. On September 16, 1998, this court received those notes, and ordered them sealed. The court further ordered that the plaintiff's counsel number the pages of the notes so that any order could accurately and simply designate which matters were to be protected from disclosure. That has been accomplished.

The statute provides that disclosure of psychological treatment records may be ordered without the consent of the patient when the patient introduces his mental condition as an element of his claim or defense. Connecticut General Statutes, Section 52-146c(c)(2). The same provision obtains with regard to the records of social workers, Connecticut General Statutes, Section 52-146q(c)(4), and psychiatrists. Connecticut General Statutes, Section 52-146f(5). Before the court can order disclosure of these records, however, the court must find that it is more important to the interests of justice that the records be disclosed than that the relationship between the patient and the provider be protected. Connecticut General Statutes, Sections 52-146c(c)(2), 52-146f(5) and 52-146q(c)(4). That finding was made by Judge Mack, and is expressly made by this court.

Nevertheless, disclosure of psychological, psychiatric, and social work records under the statute is discretionary, not mandatory. Judge Mack's orders required the disclosure of those records the court did not find too sensitive upon in camera review, but left for the court conducting the in camera review the decision of whether to sustain the plaintiff's objection with respect to issues that might be too sensitive for disclosure.

The court has reviewed the records in camera and finds that there were matters raised by the plaintiff in the course of her treatment that are indeed too sensitive to mandate disclosure. These are not matters that relate solely to the plaintiff, but rather matters involving communications between the plaintiff and her health care providers about her siblings and

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
1998 WL 779573 (Conn.Super.)
**(Cite as: 1998 WL 779573 (Conn.Super.))**

Page 2

parents. Accordingly, the court orders that the plaintiff's counsel shall:

*2 1. Make a complete copy of each provider's record included in the court file which the plaintiff seeks to have protected from disclosure. Each record has previously been marked as a court exhibit for identification and retained in the court file. The copies are to be made so that the documents marked as court exhibits be retained in the court file and sealed, for preservation for appellate review if necessary;

2. On the copy which has been made, redact those lines on each set of medical notes indicated in this order, and produce the redacted records to the defendant's counsel within ten days hereof.

The portions of the records to be redacted are set forth below.

TABULAR OR GRAPHIC MATERIAL SET AT THIS POINT IS NOT DISPLAYABLE

Orders will enter accordingly.

1998 WL 779573 (Conn.Super.)

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.